UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHERYL BUFFORD-THOMAS,  ) | |
|                  ) | |
|     Plaintiff,       ) | |
|                  ) | |
|     v.              ) | Case No. 4:22 CV 1136 RWS |
|                  ) | |
| U.S. BANK N.A.,       ) | |
|                  ) | |
|     Defendant,     ) | |

**MEMORANDUM AND ORDER**

Plaintiff Cheryl Bufford-Thomas filed this employment discrimination lawsuit in the Circuit Court of St. Louis City against her former employer, Defendant U.S. Bank N.A. ("US Bank").  US Bank had terminated Bufford-Thomas's employment in August 2021.  Bufford-Thomas alleges that US Bank discriminated against her because of her race, sex, and age in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055.1(1)(a).  She also asserts a retaliation claim under the Missouri's Workers Compensation Act. Mo. Rev. Stat. §§ 287.010–287.811.  US Bank removed the case to this Court.  US Bank has moved for summary judgment on all of Bufford-Thomas's claims.  I will grant US Bank summary judgment on Bufford-Thomas's MHRA claims because she has failed to present evidence that her termination was the result of discrimination. Bufford-Thomas's workers' compensation claim will be severed and remanded

because that claim was not removable to federal court.

### *Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof.  Id. at 324.  In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy.  Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence.  In the absence of direct evidence of

2

discrimination, courts employ the burden shifting analysis of <u>McDonnell Douglas</u> <u>Corp. v. Green</u>, 411 U.S. 792 (1973). (MHRA § 213.101.3 Mo. Rev. Stat.) (<u>Bonomo v. Boeing Co.</u>, 63 F.4th 736, 742 (8th Cir. 2023))

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Bashara v. Black Hills Corp.</u>, 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." <u>Id.</u> at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. <u>Aucutt v. Six Flags Over Mid-America, Inc.</u>, 85 F.3d 1311, 1316 (8th Cir. 1995). A rejection of the employer's proffered non-discriminatory reason by itself or combined with

elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory animus was a motivating factor in the adverse employment decision. (MHRA § 213.010.2 Mo. Rev. Stat.) A motivating factor means that "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." (Id. at § 213.010.19)

### *Background*

The following undisputed facts are taken from US Bank's statement of uncontroverted facts [ECF # 70] and Bufford-Thomas's response including her deposition. [ECF #s 78 and 79-1]

Plaintiff Cheryl Bufford-Thomas is a sixty-three-year-old African American female.  She began her employment at Defendant US Bank as a teller in 1997. Bufford-Thomas was promoted several times during her employment.  Since 2020 she held the position of Investments Operations Specialist working in "verification."  As an operations specialist Bufford-Thomas reviewed and verified IRA documents for systematic transactions and to ensure that US Bank had "the appropriate documents on file for tax purposes and IRS requirements."  [ECF # 70 at ¶ 9]  Bufford-Thomas reported directly to Tracie Johnson who, in turn, reported to Laura May.  During her employment before the incident that gave rise to this lawsuit, Bufford-Thomas was never demoted, suspended, or subjected to a reduction in pay.

Bufford-Thomas's employment was terminated on August 17, 2021.  No one at US Bank ever made a comment to her about her race, sex, or age during her employment.  Bufford-Thomas never complained to anyone at US Bank during her employment that she was being discriminated based on race, sex, or age.  In her deposition, Bufford-Thomas stated that her employment was terminated at a meeting in a conference room and during that meeting she felt that the US Bank employees spoke to her in a tone that indicated discrimination based on race, sex, age, and retaliation.  [ECF # 79-1, Pl.'s Dep. at 81:1-25; ECF # 78 at ¶ 2]  She did

not elaborate on this claim in her deposition and confirmed that no one made comments about her race, sex, or age.  She asserts that the only act of discrimination was her termination.

In 2017, Bufford-Thomas filed a workers' compensation claim due to an injury.  That claim was settled on July 22, 2021.  Bufford-Thomas's retaliation claim is based solely on her belief that she was terminated for filing a workers' compensation claim.  [ECF # 79-1, Pl.'s Dep. at 84:2-87:25]

The circumstances that led to Bufford-Thomas's termination involve her receipt of a Paycheck Protection Program (PPP) loan.  In May 2021, Bufford-Thomas received a PPP loan from UMB Bank in the amount of $20,833.00.  US Bank became aware of the loan when it was deposited in Bufford-Thomas's US Bank account.  After learning of the PPP loan deposit, US Bank began an investigation into the loan.  US Bank Fraud Investigator Elizabeth Belt was assigned to investigate the deposit and loan.

US Bank employees are required to disclose any ownership they have in a business.  After a search of open-source (Google) information on the loan, US Bank was unable to confirm that Bufford-Thomas had a business that was eligible for a PPP loan.  However, the open-source data indicated that Bufford-Thomas was connected to a business named Little Buff N' Stuff.  This was a band that "never

got off the ground."  [ECF # 70-3, Pl.'s Depo at 89:1-12]

On July 22, 2021, Belt interviewed Bufford-Thomas as part of the investigation about the PPP loan.  One of Bufford-Thomas's undisputed job responsibilities is to cooperate with an internal investigation conducted by US Bank.  [ECF # 70 at ¶ 10]  Bufford-Thomas told Belt that the loan was taken out for a real estate business, Selah LCD Property, LLC.  Bufford-Thomas stated that the loan application was filled out by her son.  However, the application contained Bufford-Thomas's signature.  She did not review the loan application before it was submitted.  She asserts that she did not apply for the loan.

The loan application indicated it was for a sole proprietorship.  The application also stated that the business had a gross income of $105,000 in 2019.  However, Selah LDC Property, LLC was not established prior to February 15, 2020.  Bufford-Thomas earned only approximately $44,000 in 2019 as revealed by her tax returns.  Bufford-Thomas did not own any business in 2019.  The loan application also contained a code that indicated the loan was for a beauty salon.  Bufford-Thomas never owned or earned money from a beauty salon.

As part of the fraud investigation Belt requested Bufford-Thomas to provide additional documentation of the loan and its use no later than July 26, 2021, to determine whether she was eligible for the loan.  On August 6, 2021, Belt again

requested Bufford-Thomas to provide the supporting documentation for the loan. Bufford-Thomas was given until August 17, 2021, to provide the information. She failed to produce the requested documentation. After an investigation into an employee' conduct, US Bank's human resources office and the department the in which the employee works make a decision on the discipline the employee should receive. Human Resource Advisor Emily Keavy and Belt recommended the termination of Bufford-Thomas's employment. Laura May, the manager of Buford-Thomas's department, agreed with the recommendation based on the sensitive nature of the CD/IRA group's work, Bufford-Thomas's lack of judgment, and her failure to comply with the request to provide documentation about the loan during the investigation. Bufford-Thomas's employment was terminated on August 17, 2021. The PPP loan was eventually forgiven on January 6, 2022. US Bank was not aware of any loan forgiveness related to the PPP loan prior to Bufford-Thomas's termination.

Bufford-Thomas filed this lawsuit in state court alleging that US Bank discriminated against her because of her race, sex, and age in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055.1(1)(a). She also asserts a retaliation claim under the Missouri's Workers Compensation Act. Mo. Rev. Stat. §§ 287.010–287.811. US Bank removed the case to this Court and has moved for

summary judgment on all of Bufford-Thomas's claims.

*Discussion*

*Bufford-Thomas's race, sex, and age discrimination claims*

The MHRA makes it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her race, sex, or age among other factors. Mo. Rev. Stat. § 213.055.1(1)(a).  In considering a MHRA claim, federal courts "primarily apply Missouri law but may also apply federal employment discrimination law to the extent federal law is applicable and authoritative under the MHRA.  Missouri courts follow federal law so long as it is consistent with Missouri law." Button v. Dakota, Minnesota & E. R.R. Corp., 963 F.3d 824, 831 (8th Cir. 2020) (internal quotations and citations omitted).

To establish prima facie case of discrimination under the MHRA in an adverse employment action a plaintiff must show that: 1) she is a member of a protected group; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) she was discharged under circumstances giving rise to an inference of discrimination.  Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011).  A plaintiff can satisfy the fourth element of the prima facie case by showing that a similarly-situated employee who was not in the plaintiff's

protected class was treated more favorably.  <u>Pye v. Nu Aire, Inc.</u>, 641 F.3d 1011, 1019 (8th Cir. 2011).  "[T]he test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." <u>Johnson v. Securitas Sec. Servs. USA, Inc.</u>, 769 F.3d 605, 613 (2014) (en banc).  A plaintiff must establish "that [she] and the employees outside of [her] protected group were similarly situated in all relevant respects." <u>Id.</u> (cleaned up). This means that the plaintiff and the potential comparators must have "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." <u>Id.</u>

Bufford-Thomas satisfies the first three elements of a prima facie case of discrimination.  She is a member of protected groups based on her race, sex, and age.  She was qualified for her position.  She was promoted during her employment and, until her termination, had never been demoted, suspended, or subjected to a reduction in pay.  She was subjected to an adverse employment action, the termination of her employment.  However, her prima facie case falls short because she fails to produce any evidence that US Bank subjected her to employment discrimination.  Her discrimination claim is based solely on the tone of the meeting when she was termination.  Yet she offers no evidence of any comments, references, or any actions by US Bank employees about her race, sex,

or age that would support a claim of discrimination from that meeting.

Instead, Bufford-Thomas seeks to support her claim by comparing herself to a white female supervisor, Courtney Wecker, who was accused of selling products out of the office and hiring people and, in turn, receiving referral bonuses for the people that she hired.  Bufford-Thomas believed that Wacker had been fired because she disappeared for over a year.  [ECF # 79-1 at 118 – 122]  When Wecker "suddenly" reappeared Bufford-Thomas speculates that Wecker had apparently been assigned to another position.  Bufford-Thomas does not know Wecker's age. [Id. at 122:7-8]  Nor has she identified any evidence in the record that establishes Wecker's age when she was disciplined.  As a result, Bufford-Thomas has failed to provide evidence to support an age discrimination claim based on Wecker's age.[1]  Wecker can only be offered as a comparator on race.[2]

Wecker is not similarly situated to Bufford-Thomas.  A plaintiff must establish that she and the employee outside of her protected group were similarly situated in all relevant respects.  The comparator must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same

---

[1] Under the MHRA employees between 40 and 70 years old fall in the protected age classification.  Mo. Rev. Stat. § 213.010.1(1).  Bufford-Thomas has not presented any evidence that Wecker was under 40 years old and therefore that she not in the protected group.  Moreover, Bufford-Thomas and Wecker are both women.  As a result, the evidence surrounding Wecker's circumstances cannot support a claim for sex or age discrimination.  Wecker is being offered for a comparison solely on Bufford-Thomas's race claim.

[2] Bufford-Thomas does not identify any male employees or any employees younger than forty years old who were treated differently than Bufford-Thomas.  As a result, she does not offer any evidence in support of her sex and age discrimination claims.

conduct without any mitigating or distinguishing circumstances. Wecker was a supervisor. Bufford-Thomas was not a supervisor. There is not any evidence in the record that Wecker and Bufford-Thomas had the same supervisor, were subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. US Bank was investigating Bufford-Thomas's possible involvement with a fraudulent loan. Wecker was disciplined for selling items at the office and receiving referral fees for people she hired. Beyond Bufford-Thomas's speculation about how and why Wecker was disciplined there is not any evidence in the record to show that these two employees were similarly situated in all relevant respects. As a result, Bufford-Thomas has failed to produce any evidence that would support her claim of race, sex, or age discrimination.

Moreover, even if Bufford-Thomas had established a prima facie case, US Bank has offered a non-discriminatory reason for Bufford-Thomas's termination. Bufford-Thomas has not offered any evidence that would support an inference that US Bank's reason for its decision was based on a discriminatory motive. As a result, US Bank is entitled to summary judgment on Bufford-Thomas's discrimination claims.

*Bufford-Thomas's workers' compensation retaliation claim*

Congress has expressly made certain claims nonremovable, including

"action[s] ... arising under the workmen's compensation laws" of any state. 28 U.S.C. § 1445(c).  When this case was removed, Bufford-Thomas's workers' compensation retaliation claim should have been severed and remanded to state court.  Neither of the parties raised this issue before US Bank's motion for summary judgment was filed.  I do not have jurisdiction to adjudicate Bufford-Thomas's removed workers' compensation claim.  As a result, this claim will be severed and remanded to state court.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant U.S. Bank N.A. motion for summary judgment as to Plaintiff Cheryl Bufford-Thomas's claims of race, sex, and age discrimination under the Missouri Human Rights Act [68] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant U.S. Bank N.A. motion for summary judgment as to Plaintiff Cheryl Bufford-Thomas's workers' compensation retaliation claim [68] is **DENIED**.

**IT IS FURTHER ORDERED that** Plaintiff Cheryl Bufford-Thomas's workers' compensation retaliation claim is **SEVERED** from this lawsuit and is **REMANDED** to the Circuit Court of St. Louis City, State of Missouri.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of December, 2024.

14